UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AFA PRIVATE EQUITY FUND 1,

       Plaintiff,

v.

MIRESCO INVESTMENT SERVICES, *et al.*,

       Defendants.

_____/

Case No. 02-74650

Honorable Nancy G. Edmunds

**ORDER (1) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT VI AGAINST MIRESCO DEFENDANTS AND DEFENDANT SANDERS MORRIS HARRIS, INC. [60]; (2) GRANTING DEFENDANT SANDERS MORRIS HARRIS, INC.'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT [81] AS TO COUNTS VIII AND IX ALLEGING FRAUD AND SILENT FRAUD AND DENYING ITS MOTION AS TO ALL REMAINING COUNTS; AND (3) GRANTING DEFENDANT WEINSTEIN, SPIRA & CO.'S MOTION FOR SUMMARY JUDGMENT [55] AS TO PLAINTIFF'S CLAIM FOR BREACH OF FIDUCIARY DUTY IN COUNT XII AND DENYING ITS MOTION AS TO PLAINTIFF'S REMAINING CLAIMS ASSERTED AGAINST WEINSTEIN**

Plaintiff AFA Private Equity Fund 1 ("AFA") filed this securities and tort action against Defendants for damages arising out of the issuance and sale of 73,000 shares of Defendant Miresco Investment Services, Inc. ("Miresco")'s Series B Convertible Preferred Stock (the "Series B Stock") to Plaintiff for an aggregate purchase price of $1 million. The matter comes before the Court on the parties' cross-motions for summary judgment; Plaintiff's motion addresses only the claims in Count VI of its First Amended Complaint whereas Defendants' motions address all claims in Plaintiff's Complaint. For the reasons stated below, this Court:

(1) DENIES Plaintiff's motion for partial summary judgment on Count VI against Miresco Defendants and Sanders Morris Harris Inc. [60],

(2) GRANTS Defendant Sanders Morris Harris, Inc. ("SMH")'s motion to dismiss and for summary judgment [81] as to Counts VIII and IX alleging fraud and silent fraud and DENIES its motion as to all remaining Counts asserted against SMH; and

(3) GRANTS Weinstein, Spira & Company ("Weinstein")'s motion for summary judgment [55] as to Plaintiff's claim for breach of fiduciary duty in Count XII and DENIES its motion as to Plaintiff's remaining claims asserted against Weinstein.

## I.   Facts

### A.  Background

#### 1.  Plaintiff's Purchase of Miresco Series B Preferred Stock

Defendant Miresco Investment Services, Inc. ("Miresco") is a national retailer and wholesale distributor of area rugs.  (1st Am. Compl. ¶¶ 2, 15.)  In early 2002, Miresco decided that it needed to raise money: (1) to provide $1.5 million to finance additional inventory; (2) to provide $600,000 to repay the principal balance of an outstanding bridge loan; and (3) for working capital purposes.  (*Id.* ¶ 19.)  Miresco decided to raise the money by selling certain securities.  (*Id.* ¶ 18.)

On or about May 2, 2002, Miresco finalized a confidential Private Placement Offering Memorandum (the "Offering Memorandum") by which Miresco proposed to raise $2.5 million through the sale of Series B convertible preferred stock (the "Series B Preferred Stock").  The Offering Memorandum offered to sell shares of Series B Preferred Stock to the recipients of the Offering Memorandum on the price and terms specified therein.

2

Defendants Miresco and SMH distributed the Offering Memorandum and other financial and managerial information to AFA's representatives in Michigan and other prospective investors in California, Illinois, Maryland, Michigan, New Jersey, New York, and Texas. (*Id.* at ¶¶ 18, 20-21.)  On May 10, 2002, Plaintiff AFA executed a Purchase Agreement, and purchased 73,600 shares of Series B Preferred Stock and tendered $1 million to Miresco. (*Id.* ¶ 62; 1st Am. Compl., Ex. B, Purchase Agreement.)

### 2.   Sanders Morris Harris, Inc. (SMH)

Defendant Sanders Morris Harris, Inc. ("SMH"), a Texas investment banking corporation, is, among other things, a broker-dealer registered with the United States Securities and Exchange Commission and various states, including Michigan.  (1st Am. Compl. and SMH Answer  ¶ 23.)  SMH acted as the placement agent for Miresco's Series B Preferred Stock.  (*Id.* at ¶ 24; Chadwick Aff. ¶ 3.)  In order to induce Plaintiff to purchase the Series B Preferred Stock in Miresco, SMH provided at least the following materials to Plaintiff via U.S. or electronic mail: (1) Offering Memorandum; (2) Purchase Agreement; (3) Miresco's audited financial statements for the year-ended December 31, 2001; (4) financial projections for 2002, 2003, and beyond; and (5) other offering and closing documents.  (*Id.* at ¶ 28(ii) and (iii).)

On May 10, 2002, Michael Chadwick, Senior Vice President and Managing Director of SMH, also served as a director of Miresco.  (Chadwick Aff. ¶ 2.)

### 3.   Weinstein Spira & Company ("Weinstein")

Weinstein, Spira & Company ("Weinstein") is a Texas professional services company engaged in, among other things, the practice of public accounting.  Weinstein is a firm of certified public accountants ("CPAs"), and it was the accountant and designated auditor for

3

Miresco.  (1st Am. Compl. ¶ 29.)  As accountants and auditors for Miresco, Weinstein prepared certified financial statements and supplemental information for Miresco on a periodic basis, including monthly financial statements, quarterly financial statements and annual audited consolidated financial statements for the years 1999-2001.  (1st Am. Compl. ¶ 30, Konen Aff. ¶¶ 5-6.) Miresco's Offering Memorandum contained Weinstein's work product, including financial statements and supplemental information for Miresco.  (1st Am. Compl. ¶ 33; Ex. A to Compl., Offering Memorandum.)

Plaintiff alleges that Weinstein's audit opinion and financial reports for Miresco falsely stated and/or implied that: (I) Weinstein accurately and properly audited the Consolidated Balance Sheets of Miresco and other financial statements; (ii) Weinstein conducted the audits in accordance with generally accepted auditing standards; (iii) Weinstein conducted the audits with proper and adequate procedures; (iv) Weinstein's work product was free from material misrepresentations; and (v) Weinstein otherwise committed no wrongful acts that resulted in material misleading information to the potential investor.  (1st Am. Compl. ¶ 34.)  Plaintiff further alleges that Weinstein did not conduct any proper audit or testing, failed to conduct a proper audit or investigation of Miresco's inventory, knew that Miresco was literally operating under dual accounting systems, and  allowed its audit opinion to be circulated and disclosed in spite of the foregoing.  (*Id.* at ¶¶ 36-38, 40-43.)

### 4.  Financial Irregularities Uncovered After May 10, 2002

Immediately after the closing of the sale of the Series B Preferred Stock to Plaintiff, Miresco began missing its targeted sales and financial goals.  At the same time, Miresco began experiencing serious short-term liquidity issues.  (1st Am. Compl. And SMH Answer ¶ 63.)

4

Sometime in June, 2002, SMH representatives informed Plaintiff that there were accounting irregularities relating to the financial position of Miresco.  Additionally, SMH representatives disclosed to Plaintiff that the financial statements used in connection with the Offering Memorandum, the Purchase Agreement, and the purchase and sale of the Series B Preferred Stock were false in material and adverse ways.  (*Id.* at ¶ 64.)

During this same period, SMH representatives disclosed to Plaintiff for the first time that Miresco was in violation of its financing arrangements with Southwest Bank (which had been in place for less than 30 days) and that the funds raised by Miresco in connection with the purchase and sale of the Series B Preferred Stock, including the $1 million raised from Plaintiff, had not been used by Miresco for the purposes set forth in the Offering Memorandum, but rather had been used to provide emergency short-term financing for Miresco.  (*Id.* at ¶ 65.)

SMH representatives also informed Plaintiff that Frederick Huttner and Greg Katt, currently the Chief Financial Officer of Miresco, were assuming operational control of Miresco, and that Defendant Mireskandari would continue as Chief Executive Officer, but would focus his day-to-day activities only on sales and marketing.  (*Id.* at ¶ 67.)

At about this time, Miresco and SMH representatives informed Plaintiff of misrepresentations in the financial statements provided to Plaintiff in connection with the Series B Offering, including: (1) sales were overstated by more than $800,000; (2) net income was overstated by more than $350,000; (3) accounts receivables were overstated by more than $400,000; and (4) inventory was overstated by more than $500,000.  It was also disclosed that Miresco's expenses had been improperly allocated and classified.  (*Id.* at ¶ 69.)

5

Plaintiff learned at that time that Miresco had retained an expert who confirmed, among other things, that Miresco's 2001 inventory and income had been materially overstated.  The expert, Douglas L. Tobler, L.L.C., prepared a report confirming these findings   (Dorman Aff. ¶ 7; Tobler Report, Ex. C to 1st Am. Compl. and Ex. O to Pl.'s Mot.)

**B.  Procedural**

Plaintiff AFA filed a 13 Count First Amended Complaint on December 23, 2003, against Miresco, SMH, Weinstein, Amir Mireskandari (officer and principal shareholder of Miresco), Marissa Hernandez (Chief Financial Officer of Miresco), Michael Chadwick (senior vice president and managing director of SMH, also served as a director of Miresco), and Frederick Huttner (Director of Miresco).

This Court previously heard SMH's motion to dismiss the claims alleged against it and Weinstein, Spira & Co. ("Weinstein")'s motion to dismiss for lack of personal jurisdiction. In an April 13, 2004 Order, this Court granted SMH's motion to dismiss the claims alleged against it in Counts I and III only and denied the motion as to the remaining Counts.  The Court also denied Weinstein's motion to dismiss for lack of personal jurisdiction.  (4/13/04 Order.)  A stipulated Order was subsequently entered dismissing Plaintiff's claims in Count III of its Complaint.  (5/27/04 Order.)  This Court also issued an Order, on April 28, 2005, granting Plaintiff's motion to enforce a written settlement agreement between Plaintiff and Defendants Miresco Investment Services, Amir Mireskandari and Miresco SPE, LLC ("Miresco Defendants").  (4/28/05 Order.)

Accordingly, the only claims currently at issue here are those alleged against Defendants SMH and Weinstein.[1]  Moreover, the claims asserted against SMH in Count I and against SMH and Weinstein in Count III are not at issue.[2]

## II.   Standard of Review

### A.  Rule 12(b)(6) Motion to Dismiss

A Rule 12 (b) (6) motion to dismiss tests the sufficiency of a complaint.  In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief.  *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996); *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir. 1996).

This standard of review "'requires more than the bare assertion of legal conclusions.'" *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The complaint must include direct or indirect allegations "respecting all the material elements to sustain a recovery under *some* viable legal theory." *See In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citations omitted). A court should not grant a 12(b)(6) motion unless the movant shows "beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The Court's function "is not to

---

[1]Because AFA has elected to enforce a written settlement agreement between it and the Miresco Defendants, there is no need for this Court to consider AFA's motion for partial summary judgment as to these settled claims or the Miresco Defendants' arguments in opposition to that motion.

[2]This Court granted SMH's motion to dismiss the claims alleged against it in Count I on April 13, 2004.

weigh the evidence or assess the credibility of witnesses but rather to examine the complaint and determine whether the plaintiff has pleaded a cognizable claim." *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 452 (6th Cir. 2003) (internal citations omitted).

## B.  Rule 56 Motion for Summary Judgment

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice.  Rather, there must be evidence on which the jury could reasonably find for the non-moving party.  *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

8

### III.   Analysis

Currently before the Court is:

(1)  Plaintiff's motion for partial summary judgment against Defendant SMH on Count VI of its First Amended Complaint alleging violations of Michigan's Uniform Securities Act;

(2)  SMH's motion to dismiss and for summary judgment as to:

     (a)     Count IV alleging violations of Section 17(a) of the 1933 Securities Exchange Act;

     (b)     Counts V and VI alleging violations of the Michigan Uniform Securities Act;

     (c)     Count VIII alleging fraud;[3]

     (d)     Count IX alleging silent fraud;[4] and

     (e)     Count XI alleging negligence and breach of a fiduciary duty;

(3)  Weinstein's motion for summary judgment as to:

     (a)     Counts I and IV alleging violations of federal securities laws;

     (b)     Count VI alleging a violation of the Michigan Uniform Securities Act;

     (c)     Count VIII alleging fraud;

     (d)     Count IX alleging silent fraud; and

     (e)     Count XII alleging negligence and breach of a fiduciary duty.

This Court begins its analysis with SMH and Weinstein's arguments challenging Plaintiff's claims under the federal securities laws.

---

[3]Plaintiff, in its Response, does not oppose dismissal of this Count VIII.  Accordingly, SMH's motion will be granted as to this Count.

[4]Plaintiff likewise does not oppose this Count IX in its Response.  Accordingly, SMH's motion will be granted as to Count IX.

### A.  Section 17(a) of the Securities Act of 1933

SMH moves to dismiss Plaintiff's claims under Section 17(a) of the Securities Act, arguing that there is no private right of action under Section 17(a).  Binding precedent from the Sixth Circuit provides otherwise.  In *Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485, 492 (6th Cir. 1990), the Sixth Circuit observed that it "has held that section 17(a) implies a private cause of action only for 'purchasers.'"  Plaintiff has alleged that it was a purchaser of Miresco Series B Stock.  This Court is not convinced by SMH's argument that the Sixth Circuit overruled this established precedent *sub silencio* in an unpublished opinion by affirming a district court's dismissal of a Section 17(a) claim "for the reasons stated in the district court's . . . Memorandum Opinions."  *Burns v. Price Waterhouse*, No. 94-3134, 1995 WL 106116, *1 (6th Cir. March 10, 1995).

SMH next argues that Plaintiff has failed to produce any evidence that SMH was a "seller" as required by Section 17(a).  SMH is mistaken.  Plaintiff has produced evidence that SMH was a statutory "seller" under the tests articulated by the Supreme Court in *Pinter v. Dahl*, 486 U.S. 622 (1988), and its progeny.

In *Pinter*, the Court considered whether the statutory definition of "seller" "extends to persons other than the person who passes title."  *Id.* at 642.  Holding that it did, the Court observed that "[i]t long has been 'quite clear,' that when a broker acting as agent of one of the principals to the transaction successfully solicits a purchase, he is a person from whom the buyer purchases within the meaning of § 12 and is therefore liable as a statutory seller."  *Id.* at 646.  The Sixth Circuit subsequently observed that statutory "sellers" are either "the party who passes title of ownership in the transaction" or "those parties that have played a 'substantial role' in persuading or seducing the purchasers into buying the securities."

10

*Craighead*, 899 F.2d at 493 (citing cases).  As to brokers, the *Craighead* Court observed that they "have been held liable as 'sellers' only in those cases where they were closely aligned with the title-holding parties or worked as agents of the securities issuers."  *Id.*

It is undisputed that SMH is an investment banking firm registered as a broker-dealer. (SMH Br. at 2.)  Moreover, Plaintiff presents evidence that SMH had a contract with Miresco to provide services in connection with the offer and sale of shares of Miresco's Class B Preferred Stock.  (Pl.'s Ex. A, Placement Agency Agreement.)  This Agreement appointed SMH as "the exclusive selling agent . . . for the purpose of finding subscribers for . . . the Shares . . . through a private offering" and provided SMH with significant financial incentive to obtain investors in the sale of the Series B Preferred Stock.  (*Id.* at ¶¶ 4, 4(f).)  Plaintiff also presents evidence that SMH specifically solicited Plaintiff to make an investment in Miresco.  (Pl.'s Mot., Exs. A, H, I and J; Chadwick Aff. ¶ 3.)  Accordingly, this Court denies SMH's motion to dismiss or for summary judgment as to Plaintiff's federal securities claims.

Weinstein raises a similar statutory "seller" argument, contending that Plaintiff has no evidence showing that Weinstein played a substantial role in persuading Plaintiff to purchase Miresco's Class B Preferred Stock.  Weinstein is mistaken.  Plaintiff has presented evidence showing that a genuine issue of material fact exists on this issue thus defeating summary judgment.

Plaintiff presents evidence that Weinstein knew Miresco was in the process of raising equity capital in the first quarter of 2002.  (Balke Dep. at 203, 205.)  It learned of Miresco's Series A Offering during the audit of Miresco's 1999 and 2000 financial statements conducted in 2001, and learned of Miresco's Series B Offering during the course of its audit

11

of the 2001 financial statements conducted in 2002.  Its knowledge that its final audited financial statements would be circulated to investors who would rely on them in making their investment decisions is evidenced by Weinstein's delivery of 15 originals of the final 1999/2000 audited financial statements in 2001 (when Miresco had only 2 shareholders) and 20 originals of the final audited financial statements in 2002.  (Balke Dep. at 211-12.) As Mr. Dorman (an AFA Director) avers, a substantial factor in Plaintiff AFA's decision to invest in Miresco was its receipt of the final annual audited financial statement for the year ended December 31, 2001, along with the audit opinion of Weinstein from its audit of those financial statements, showing that Miresco's financial condition was substantially the same as that reflected in the draft financial statements provided earlier.  (Dorman Aff. ¶¶ 5, 9.) Weinstein's audit opinion of Miresco's final audited financial statements for the year ended December 31, 2001, were provided to Plaintiff to induce its investment.

Also, contrary to Weinstein's arguments here, Plaintiff produces evidence that Weinstein made misrepresentations and misstatements.  For example, Plaintiff presents deposition testimony to support its claim that the audit opinion falsely states that it was conducted in accordance with GAAS.  (Balke Dep. at 191, 199-200, 211, 219-220, 223-26; Tobler Report at 4, Ex. C to 1st Am. Compl.)

Furthermore, as Plaintiff correctly points out, Weinstein misstates the law when it argues that Plaintiff must prove it acted with intent to deceive.  (Weinstein Br. at 18.) Rather, to succeed under its Section 17(a) claims, Plaintiff must show that Weinstein acted with "scienter."  *See Aaron v. SEC*, 466 U.S. 680 (1980).  Weinstein does not argue that Plaintiff has no evidence showing that it acted with "scienter."

12

Finally, Weinstein argues that Plaintiff has no evidence that it suffered any loss as a result of Weinstein's misrepresentations.  (Weinstein Br. at 18.)  Weinstein is mistaken. Dorman, one of Plaintiff's directors, avers that AFA's decision to invest was conditioned upon receipt of the final audited financial statements and its satisfaction that they conformed to the drafts earlier provided to Plaintiff.  (Dorman Aff. ¶¶ 5, 9.)

In light of the above, Weinstein's motion for summary judgment on Plaintiff's federal securities claims is denied.

**B.  Michigan Uniform Securities Act**

SMH seeks dismissal of Counts V and VI of Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that there is no private cause of action under Mich. Comp. Laws 451.501(2), and thus Plaintiff cannot state a claim for relief under the Michigan Uniform Securities Act.  Plaintiff responds that SMH reads the allegations in its complaint and Michigan's Uniform Securities Act, Mich. Comp. Laws Ann. §§ 451.501, *et seq.*,  too narrowly.  This Court agrees.

Michigan's Uniform Securities Act makes it "unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly" "to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading." Mich. Comp. Laws Ann. § 451.501(2). Contrary to SMH's argument here, the Act does provide a securities buyer with a private cause of action against any person who either sells unregistered securities or sells a security by means of an untrue statement or omission of a material fact.  It expressly provides that:

13

(a)  Any person who does either of the following is liable to the person buying the security from him or her <u>and the buyer may sue either at law or in equity to recover the consideration paid for the security, together with interest at 6% per year from the date of payment, costs, and reasonable attorney fees, less the amount of income received on the security, upon the tender of the security</u> or, if he or she no longer owns the security, for damages which shall be the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at 6% per year from the date of disposition:

(1)  [sells unregistered securities].

(2)  Offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he or she did not know, and in the exercise of reasonable care could not have known, of the untruth or omission.

Mich. Comp. Laws Ann. § 451.810(a)(1)(2) (emphasis added).  The Act further provides that "every broker-dealer or agent who materially aids in the sale" is "also liable jointly and severally with and to the same extent as the seller," unless the broker-dealer or agent "sustains the burden of proof that he or she did not know, and in the exercise of reasonable care could not have known, of the existence of facts by reason of which the liability is alleged to exist."  § 451.810(b).

Plaintiff, in support of its motion for partial summary judgment on Count VI of its complaint, argues that it has presented evidence showing that SMH, Miresco's broker-dealer in the Series B Preferred Stock, materially aided Miresco in the sale of securities to Plaintiff and thus is jointly and severally liable to it as provided under § 451.810(b).  For example, Plaintiff presents evidence that its representative, Daniel Dorman, located in the State of Michigan, was initially contacted by Michael Chadwick from SMH on April 12, 2002, to discuss an investment opportunity in Miresco.  (Pl.'s Ex. H, Dorman's 4/12/02 notes.)

14

That telephone conversation was then followed up by a letter from SMH enclosing various financial details concerning Miresco.  (Pl.'s Ex. I, 4/12/02 letter from M. Chadwick.)  SMH then delivered to Plaintiff a booklet describing Miresco and its business and summarizing its historic and projected financial condition and results of operation.  (Pl.'s Ex. A.)  Later, an initial draft of the Offering Memorandum was delivered to Dorman via e-mail.  (Pl.'s Ex. J.)  The final version of the Offering Memorandum, which expressly offered the sale of the shares of Series B Preferred Stock, was delivered to Dorman's address in Michigan.  SMH is a registered broker and was retained by Miresco to aid in the sale of its Series B Preferred Stock.  (Pl.'s Ex. G, Placement Agency Agreement.)  Miresco has admitted SMH's involvement.  (Miresco Answer ¶ 98.)

Plaintiff also presents evidence that materials delivered to it in an effort to induce it to purchase Miresco's Series B Preferred Stock contained material misrepresentations and omitted material information in violation of § 451.810(a)(2).  (Pl.'s Exs. K, M, O, R.)  Plaintiff did not have knowledge of these material misrepresentations or omissions before it purchased the Series B Preferred Stock.  (Dorman Aff., Ex. Q.)  Upon learning of these material misrepresentations and omissions, Plaintiff tendered the return of the stock.  (Abatement Agreement, Ex. D to Complaint; 1st Am. Compl. ¶¶ 70, 106, 118 and 128.)

SMH's response and its cross motion, however, demonstrate that genuine issues of material fact exist on this issue.   Despite the unsupported conclusion stated in Michael Chadwick's Affidavit in ¶ 6 that, in the exercise of reasonable care, SMH could not have known of the material misrepresentations and omissions that give rise to Plaintiff's claims, the fact that, at the time of Plaintiff's stock purchase, Chadwick was both a senior vice president and managing director at SMH and a director at Miresco suggests otherwise.  So

15

too does the claim that SMH conducted a due diligence review of Miresco, as discussed in the stock Purchase Agreement, ¶ 5.1(q), yet failed to discover the problems later revealed in the Tolber Report.  (Pl.'s Mot., Ex. C.)   Accordingly, Plaintiff and SMH's cross-motions are denied as to Plaintiff's claims under Mich. Comp. Laws Ann. § 451.810(a)(2).

SMH next argues that Plaintiff has failed to state a claim in Count V of its complaint based on an unregistered sale of securities because Miresco's Series B Preferred Stock sold to Plaintiff is a federally covered security and thus exempt from registration under Mich. Comp. Laws Ann. § 451.701(3).  (SMH Br. at 8.)  Michigan's Uniform Securities Act defines "federally covered security" as "any security that is a 'covered security' under the securities act of 1933 or rules or regulations promulgated under that act."  Mich. Comp. Laws Ann. § 451.801(h).  Under the Securities Act of 1933, 15 U.S.C. § 77r(b)(4)(D), SMH asserts, a "covered security" is defined as one that is exempt from registration pursuant to § 77d(2).  Section 77d(2) exempts "transactions by an issuer not involving any public offering." 15 U.S.C. § 77d(2).  SMH then concludes that, because it is uncontested that the sale of securities was private, this exemption applies.

Contrary to SMH's assertion, Plaintiff does dispute this issue.[5]  It responds that the plain language of § 77r(b)(4)(D) defines a "covered security" as one that "is exempt from registration under this title pursuant to . . . Commission rules or regulations issued under [section 4(2)] . . . ."  15 U.S.C. § 77r(b)(4)(D).  Accordingly, SMH must present evidence showing that the securities at issue here are exempt from registration under the rules adopted by the SEC under § 4(2).  Moreover, it is SMH's burden, as the party relying on

---

[5]That this issue was not contested in an earlier motion does not preclude Plaintiff from contesting the issue here.

16

the exemption, to establish that the exemption applies and that all conditions of the exemption have been satisfied. *See e.g., S.E.C. v. Ralston Purina Co.*, 346 U.S. 119, 126-27 (1953). Likewise, under Michigan's Uniform Security Act, it is SMH's burden, as the person claiming it, to prove that an exemption applies. Mich. Comp. Laws Ann. § 451.802(c). Accordingly, because the burden of proving the availability of an exemption from registration falls on SMH, Plaintiff has properly stated a claim for relief.

In light of the above, this Court denies SMH's motion seeking dismissal of Plaintiff's claims under Michigan's Uniform Securities Act.[6]

### C. Plaintiff's Common Law Tort Claims

SMH argues that Plaintiff's common law claims against it for fraud, silent fraud, negligence, and breach of fiduciary duty (Counts XIII, IX, and XI) should be dismissed under Rule 56 because Plaintiff has not, and cannot produce evidence to support the essential elements of its claims. Plaintiff does not dispute SMH's arguments as to its claims for fraud and silent fraud (Counts XIII and IX). Accordingly, those claims will be dismissed. Plaintiff does, however, dispute SMH's arguments as to its claims of negligence and breach of fiduciary duty (Count XI).

To sustain a negligence claim against SMH, Plaintiff must prove: (1) SMH owed a legal duty to Plaintiff; (2) SMH breached that duty; and (3) Plaintiff suffered damages proximately caused by SMH's breach. *See Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998); *Lutheran Brotherhood v. Kidder Peabody & Co., Inc.*, 829 S.W.2d 300, 309 (Tex. App. 1992) (observing that a duty exists under Texas law "not to negligently supply

---

[6]Weinstein's motion does not specifically address Plaintiff's claims under Michigan's Uniform Securities Act. Accordingly, its motion is denied as to such claims.

17

false information to others for use in their business transactions.").[7]  To sustain its breach of fiduciary duty claim, Plaintiff must prove that a fiduciary relationship existed between SMH and Plaintiff, that SMH breached a duty arising under that relationship, and that SMH's breach caused Plaintiff to suffer damages.  Plaintiff has presented evidence supporting each of these elements.

The Stock Purchase Agreement provides that SMH was to act as an agent for Plaintiff and other investors, that SMH was to assure that all documents and instruments incident to the stock transaction were satisfactory in substance and form, that SMH would conduct a due diligence investigation and inform Plaintiff whether, in its good faith judgment, there were any material facts that would make the investment inadvisable, and that SMH would assure that the business, assets, financial condition, and operations of Miresco were substantially as represented to SMH.  (Pl.'s Mot., Ex. C, Purchase Agreement ¶¶ 3.5, 3.21, 5.1(p), 5.1(q).)  This evidence is presented to show that SMH undertook a duty on behalf of Plaintiff and other investors to conduct due diligence for the investor's benefit and to determine to its satisfaction whether Miresco satisfied the conditions to the investors' obligations to invest.  Plaintiff also presents evidence showing that genuine issues of material fact exist on the questions whether SMH breached that duty and that its breach caused Plaintiff to suffer damages.  (Offering Memorandum with financial statements, Ex. A to 1st Am. Compl.; 1st Am. Compl. and SMH Ans. ¶¶ 28, 64, 69; Chadwick Aff. ¶ 2; Pl.'s Mot. Ex. B, Dorman notes; Ex. C, Tolber Report; Ex. D, Dorman Aff.; Ex. E, Balke Dep. at 110, 206, 211-12; Ex. F, Minutes Miresco 12/4/01 and 12/18/01 board meetings; Ex. G,

---

[7]SMH and Plaintiff agree that Texas law applies to these common law claims.

18

Konen Dep. at 123; Pl.'s Reply, Ex. 3, Huttner Dep. at 39-44, 49.)   Accordingly, SMH's motion for summary judgment as to Plaintiff's negligence and breach of fiduciary claims is denied.

Weinstein likewise argues that Plaintiff's claims of fraud, silent fraud, negligence, and breach of fiduciary duty (Counts VIII, IX, and XII) should be dismissed because Plaintiff has not and cannot present evidence supporting their essential elements.[8]   Plaintiff responds that it has presented evidence that shows genuine issues of material fact exist for trial on each of these claims.   This Court agrees.

Under Texas law,[9] to prevail on its fraud claim, Plaintiff must prove that Weinstein: (1) made a material misrepresentation that was false; (2) knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) intended to induce Plaintiff to act upon the representation; and (4) Plaintiff actually and justifiably relied upon the representation and thereby suffered injury. *Ernst & Young, L.L.P. v. Pacific Mutual Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).

In addition to these elements, a claim for silent fraud also requires that the plaintiff show that there was a duty to disclose.   *Columbia/HCA Healthcare Corp. v. Cottey*, 72 S.W.3d 735, 744 (Tex. App. 2002).   The duty to disclose arises in four situations:  (1) where

---

[8]This Court rejects Weinstein's argument that Plaintiff cannot rely on pleadings, documents attached to the pleadings, or documents authenticated by witnesses in deposition testimony to defeat Weinstein's motions for summary judgment. *See* Fed. R. Civ. P. 56(c), 56(e); 10A C. Wright, A. Miller and M. Kane, *Federal Practice & Procedure* § 2722 (3d ed 1998).

[9]This Court rejects Weinstein's argument that Michigan law applies to Plaintiff's tort claims.   Applying Michigan's choice-of-law rules, this Court is convinced that there is a rational reason to displace Michigan law (*see* Pl.'s Resp. at 11-13) and thus concludes that Texas law applies to Plaintiff's tort law claims.

19

there is a confidential relationship; (2) one who voluntarily discloses information has a duty to disclose the whole truth; (3) one who makes a representation has a duty to disclose new information when he is aware that the new information makes the early representations misleading or untrue; or (4) when one makes a partial disclosure and conveys a false impression. *Hendricks v. Thornton*, 973 S.W.2d 348, 363 (Tex. App. 1998).

Contrary to Weinstein's arguments, Plaintiff presents evidence that Weinstein made false material misrepresentations in the final Miresco 2001 year-end financial statements audited by Weinstein and knew or should have known that Plaintiff would be relying on those misrepresentations in deciding whether to invest in Miresco's Series B Preferred Stock.  (Pl.'s Mot. Ex. B, Dorman notes; Ex. C, Tolber Report; Ex. D, Dorman Aff.; Ex. E, Balke Dep. at 110, 206, 211-12; Ex. F, Minutes Miresco 12/4/01 and 12/18/01 board meetings; Ex. G, Konen Dep. at 123; Pl.'s Reply, Ex. 3, Huttner Dep. at 39-44, 49.) Moreover, under Texas law, the reliance element of a fraud claim does not depend on privity and may be established by a "reason to expect" reliance.  *See Ernst & Young,* 51 S.W.3d at 577-78.  *See also Averitt v. PriceWaterhouseCoopers L.L.P.*, 89 S.W.3d 330, 335 (Tex. App. 2002) (observing that, "[e]ven absent privity of contract, an accountant may be liable to third parties for damages arising from the accountant's misrepresentations if the nonclients can show that they were within the class of persons the accountant knew or should have known would be relying on his work.").   Accordingly, genuine issues of material fact exist for trial on Plaintiff's fraud and silent fraud claims.

Finally, Weinstein argues that, under Texas law, the economic loss rule precludes Plaintiff from recovering economic damages in a negligence action absent either:  (1) privity of contract; or (2) personal injury or damage to property and Plaintiff cannot establish

20

either.  *See Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.*, 29 S.W.3d 282, 287-88 (Tex. App. 2000).  Plaintiff does not dispute this.  Rather, Plaintiff correctly points out that the Texas Courts do not apply the economic loss rule in cases, like the one here, involving claims of professional negligence.  *Coastal Conduit & Ditching*, 29 S.W.3d at 289 n.2 (distinguishing claims brought by third parties against an accountant for negligent misrepresentation alleging that the "third parties relied upon financial statements prepared by an accountant, who fails to exercise ordinary care in the preparation of such statements, and the third party suffers financial loss because of such reliance.").  As discussed above, Texas law recognizes such claims even absent privity of contract.  "[A]n accountant may be liable to third parties for damages arising from the accountant's misrepresentations if the nonclients can show that they were within the class of persons the accountant knew or should have known would be relying on his work."  *Averitt*, 89 S.W.3d at 335.  This claim is premised "upon whether the accountant intended or had reason to expect that the third parties would act in reliance upon the misrepresentation."  *Id.*  It is not, however, "premised upon a fiduciary relationship."  *Id.*  Accordingly, Weinstein's motion is denied as to Plaintiff's negligence claim but granted solely as to Plaintiff's breach of fiduciary claim asserted in Count XII.

## IV.  Conclusion

For the foregoing reasons, this Court:

(1) DENIES Plaintiff's motion for partial summary judgment on Count VI against Miresco Defendants and Sanders Morris Harris Inc. [60],

(2) GRANTS SMH'S motion to dismiss and for summary judgment [81] as to Counts VIII and IX alleging fraud and silent fraud and DENIES its motion as to all remaining Counts asserted against SMH; and

(3) GRANTS Weinstein's motion for summary judgment [55] as to Plaintiff's claim for breach of fiduciary duty in Count XII and DENIES its motion as to Plaintiff's remaining claims asserted against Weinstein.



                    s/Nancy G. Edmunds_____
                    Nancy G. Edmunds
                    United States District Judge

Dated:  September 30, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2005, by electronic and/or ordinary mail.

                    s/Carol A. Hemeyer_____
                    Case Manager