UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AFA PRIVATE EQUITY FUND 1,

       Plaintiff,

v.

MIRESCO INVESTMENT SERVICES, *et al.*,

       Defendants.

_____/

Case No. 02-74650

Honorable Nancy G. Edmunds

**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFF'S MOTION FOR CONTEMPT AGAINST DEFENDANTS MIRESCO, MIRESKANDARI AND SANDERS MORRIS HARRIS, OR ALTERNATIVELY FOR RESCISSION OF THE SETTLEMENT AGREEMENT [107-108]**

Plaintiff AFA Private Equity Fund 1 ("AFA") filed this securities action against Defendants for damages arising out of a private initial offering securities sale. This matter comes before the Court on AFA's motion seeking to hold Defendants Miresco, Mireskandari and Sanders Morris Harris in contempt or, alternatively, seeking to rescind its Settlement Agreement with these Defendants. Plaintiff's motion is DENIED IN PART and GRANTED IN PART. Because Plaintiff has not convinced the Court that contempt is a proper remedy for Defendants' breach of the Settlement Agreement, its motion seeking that relief is DENIED. Plaintiff's alternative request, that the Settlement Agreement be rescinded, is GRANTED.

I.    **Facts**

   A.  **Background**

   Miresco is a national retailer and wholesale distributor of area rugs.  (1st Am. Compl. ¶ 15.)  In early 2002, Miresco decided to raise money by selling certain securities.  (*Id*. at ¶ 18.)  Miresco issued a confidential Private Placement Offering Memorandum (the "Offering Memorandum") by which Miresco proposed to raise $2.5 million through the sale of Series B convertible preferred stock (the "Series B Preferred Stock").  Defendants distributed the Offering Memorandum and other financial and managerial information to AFA's representatives in Michigan.  (*Id*. at ¶¶ 18, 21.)

   Defendant Sanders Morris Harris, Inc. ("SMH"), a Texas financial services firm, offers private client services, institutional investment services, investment banking services and private equity funds to individuals and entities throughout the United States, including individuals and entities located in the State of Michigan.  (*Id*. at ¶ 23.)  SMH acted as the placement agent for the offering of the Series B Preferred Stock.  (*Id*. at ¶ 24.)  It was a dual agent, serving as agent for both Miresco and each of the investors in the Series B Preferred Stock.  (*Id*.)

   At all relevant times, Defendant Michael Chadwick was a director, member of the audit committee, and shareholder of Miresco, as well as a Senior Vice President, Managing Director, and shareholder of SMH.  (*Id*. at ¶¶ 7, 51.)  Chadwick was directly responsible for preparing the financial statements and other financial information of Miresco.  (*Id*. at ¶ 53.)  Representatives of SMH, including Chadwick, helped prepare, reproduce and distribute the Offering Memorandum and other documents.  (*Id*. at ¶ 27.)  SMH's representatives, including Defendant Chadwick, communicated with Plaintiff numerous times by telephone,

2

mail, and e-mail regarding the sale of the stock.

Weinstein, Spira & Company ("WSC") is a firm of public accountants, and WSC was the accountant and auditor for Miresco.  (*Id.* at ¶ 29.)  Financial information compiled by WSC appears throughout the Offering Memorandum.  (*Id.* at ¶ 33.)

On May 10, 2002, Plaintiff AFA executed the Purchase Agreement, whereby AFA purchased 73,600 shares of Series B Preferred Stock in exchange for $1 million.  In June of 2002, SMH representatives, including Chadwick, informed Plaintiff that the financial statements used in connection with the Offering Memorandum, the Purchase Agreement, and the purchase and sale of the Series B Preferred Stock were materially and adversely false.  (*Id.* at ¶¶ 62, 64.)

### B.  Procedural

Plaintiff AFA's First Amended Complaint, filed December 23, 2003, alleges: violations of Sections 10(b) and 29b of the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.* (Counts I and II); violations of Section 12(a)(2) of the Securities Act of 1933 (Count III - subsequently dismissed by the parties via stipulation dated 5/27/04); violations of Section 17(a) of the Securities Act of 1933 (Count IV); violations of the Michigan Uniform Securities Act, Mich. Comp. Laws § 451.701 (Count V) and § 451.501(2) (Count VI); breach of contract (Counts VII and XIII); fraud (Count VIII); silent fraud (Count IX); negligent misrepresentation (Count X); and negligence and breach of fiduciary duty  (Counts XI and XII).  Defendants include Miresco Investment Services, Inc. ("Miresco"), SMH, Weinstein Spira & Co., Amir Mireskandari (officer and principal shareholder of Miresco), Marissa Hernandez (Chief Financial Officer of Miresco), Michael Chadwick, and Frederick Huttner (Director, member of the audit committee, consultant and shareholder of Miresco).

3

This Court previously heard SMH's motion to dismiss the claims alleged against it and Weinstein, Spira & Co.'s motion to dismiss for lack of personal jurisdiction. In an April 13, 2004 Order, this Court granted SMH's motion to dismiss the claims alleged against it in Counts I and III only and denied the motion as to the remaining Counts. The Court also denied WSC's motion to dismiss for lack of personal jurisdiction.

## 1.  December 2004 Settlement

On December 22, 2004, Defendants Miresco Investment Services, Amir Mireskandari and Miresco SPE, LLC ("Miresco Defendants") made a written settlement offer to Plaintiff AFA. That letter stated that, "[a]lthough this letter contains the material terms of the offer, the parties will enter into final settlement documentation once this offer is accepted." (Pl.'s Ex. D at 2 (emphasis added).) Plaintiff accepted the settlement offer in writing on December 23, 2004. The material terms of the settlement offer are as follows.

Miresco Investment Services:

(1) will pay AFA $600,000 in cash in two equal installments -- $300,000 on the date the settlement agreement contemplated above is signed by AFA, and $300,000 thirty (30) days after that date; and

(2) entitle AFA to collect additional sums from the monetary recovery (through settlement or judgment), if any, from the litigation against WSC pending in Harris County, Texas (the "WSC Harris County Litigation") (potentially $200,000).[1]

---

[1]Specifically, AFA will collect a total of $200,000 from the monetary recovery in the WS Harris County Litigation, but this amount will be due and payable only after the following payments are made from the gross recovery from the WS Harris County Litigation:

(a)    first, to the parties that have funded the Harris County Litigation, in an amount equal to 250% of the "at risk" dollars provided by each such party in connection with the

4

Once the second $300,000 installment payment is made from Miresco to AFA, AFA will:

(1) sign a release of liability and dismiss with prejudice all claims asserted or that could have been asserted against Miresco (and its officers, directors, shareholders, affiliates, subsidiaries, and parent companies), Amir Mireskandari, Miresco SPE, LLC, Sanders Morris Harris, Inc. ("SMH") (and its officers, directors, shareholders, affiliates, subsidiaries, and parent companies) and Innovation Growth Partners II, LLC ("IGP") (and its officers, directors, shareholders, affiliates, subsidiaries, and parent companies);

(2) return to Miresco all stock (common or preferred) and warrants issued to AFA; and

(3) assign to Miresco all claims AFA ever had against Weinstein Spira & Co. ("WSC") with respect to AFA's investment into Miresco.

---

financing of the Harris County Litigation, which is currently estimated to be $220,000; and
(b)      second, $170,000 to repay notes issued to finance the initial $200,000 repurchase of shares from AFA (the $170,000 Note Repayment).

After these two payments have been made from the WS Harris County Litigation recovery, if any, then AFA, IGP and the other Series B Shareholders (represented by SMH) would share pro rata in the next $2,730,000 from that litigation recovery based upon the following ratio amounts (until recovery of such amounts):

(a)      with regard to AFA, $200,000;
(b)      with regard to other Series B Stockholders, $1,500,000; and
(c)      with regard to IGP, $1,030,000.

If there is not enough money left from the recovery in the WS Harris County Litigation after the WS Litigation Financing Payment and $170,000 Note Repayments are made to equal $2,730,000, then SMH, AFA, and IGP will split what is left over in the following percentages which should correspond to the pro rata sharing arrangement set forth above: (a) AFA: 7.326%; (b) IGP: 37.72893%; and (c) SMH: 54.94505%.

The Offer had an attached email indicating SMH and IGP's agreement to allow APA to share in the WS Harris County Litigation Recovery as set forth above.

5

The December 22, 2004 letter stated that the offer was valid until revoked or until 5:00 p.m. on December 24, 2004, whichever first occurred.  As indicated above, AFA accepted on December 23, 2004.

### 2.  Plaintiff's Earlier Motion to Enforce Settlement Agreement

In response to Plaintiff's earlier motion, this Court concluded that Plaintiff and the Miresco Defendants reached an agreement on all material terms and thus granted Plaintiff's motion to enforce the written Settlement Agreement.  (4/28/05 Order.)  Plaintiff is now before the Court seeking to have the Court either hold Defendants in contempt for breaching the Settlement Agreement or, alternatively, to allow Plaintiff to rescind the Settlement Agreement.

### II.   Analysis

It is undisputed that Defendants have not made the payments required under the parties' December 2004 Settlement Agreement.  Plaintiff AFA proposes two remedies for Defendants' breach.  First, it argues that this Court has "inherent" power to enforce the December 2004 Settlement Agreement.  *Arco Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir. 1976).  Accordingly, AFA argues, it should compel Defendants to pay over money Defendants claim they do not have.  Alternatively, Plaintiff argues that rescission of the Settlement Agreement is proper because Defendants' failure to make the required payments constitutes a material breach affecting a substantial or essential part of the contract.  *See P.A.L. Investment Group, Inc. v. Staff-Builders, Inc.*, 118 F. Supp.2d 781, 786 (E.D. Mich. 2000) (applying Michigan law and observing that it "is well established that a material breach entitles the non-breaching party to rescind a contract.").

6

**A.  Civil Contempt**

Plaintiff's argument for holding Defendants in contempt for breaching the Settlement Agreement is not persuasive.  The facts of this case are easily distinguished from the decisions on which Plaintiff relies.  (*See* Miresco Defs.' Resp. at 4-5.)  Plaintiff cannot bootstrap this Court's grant of its earlier motion to enforce the Settlement Agreement into an argument for civil contempt.  Unlike the decisions Plaintiff relies on, the Court's Order granting Plaintiff's previous motion did not enjoin Defendants from taking certain actions and did not require them to take any affirmative action.  Accordingly, holding Defendants in civil contempt is an improper remedy for Defendant Miresco's breach of Settlement Agreement by failing to make payments required under that contract.  Plaintiff's alternative request for relief, however, is more persuasive.

**B.  Rescission**

Plaintiff also seeks to rescind the Settlement Agreement.  It argues that Defendants' failure to make the required payments constitutes a material breach because it affects a substantial or essential part of the contract.  Without Defendants' payment of the money, Plaintiff asserts, there can be no dismissal of this action or release of claims asserted by Plaintiff against Defendants.  Moreover, as this Court previously observed in its prior summary judgment opinion, Plaintiff cannot simultaneously seek to enforce the Settlement Agreement and continue to litigate against Defendants who were parties to that Settlement Agreement.  (*See* 9/30/05 Order at 7, n.1.)  In light of this stalemate, Plaintiff argues, it is entitled to rescind the Settlement Agreement.  This Court agrees.

The Miresco Defendants' failure to make payments as required under the Settlement Agreement constitutes a material breach because it affects an essential part of that

7

contract.  Without the Miresco Defendants' payment, this lawsuit cannot be completed. The parties to the Settlement Agreement are at a stalemate.  To break this impasse caused by the Miresco Defendants' material breach of the Settlement Agreement, Plaintiff is entitled to rescind that Agreement.  *See P.A.L. Investment Group*, 118 F. Supp.2d at 787 (observing that "[w]here the breach substantially limits the non-breaching party from receiving the benefit of his bargain, the breach is deemed material and the victim of the breach may rescind the deal.").

Moreover, under the terms of the Settlement Agreement, Plaintiff is not required to dismiss its claims against the Miresco Defendants unless and until contractual payments are made.  Accordingly, despite Defendants' arguments to the contrary, it has not made an election of remedies that would preclude rescission of the Settlement Agreement.

## III.  Conclusion

For the above-stated reasons, Plaintiff's motion for contempt against Defendants Miresco, Mireskandari and Sanders Morris Harris, or alternatively for rescission of the Settlement Agreement in DENIED IN PART and GRANTED IN PART.  Plaintiff's request seeking to hold Defendants in contempt is DENIED, but its alternative request seeking rescission of the Settlement Agreement is GRANTED.


                    s/Nancy G. Edmunds
                    Nancy G. Edmunds
                    United States District Judge

Dated:  March 16, 2006

8

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 16, 2006, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager